## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>　　　PHOEBEN, INC., d/b/a ARMENTA,<br>　　　　　　　Debtor. | Case No. 16-31000<br><br>Chapter 11 |

### NOTICE

**PLEASE TAKE NOTICE** that the Debtor hereby files a proposed combined disclosure statement and plan of liquidation.

**PLEASE TAKE FURTHER NOTICE** that the Debtor intends to seek conditional approval of the disclosure statement.

Respectfully submitted, June 26, 2019.

JONES MURRAY & BEATTY LLP

_/s/ Christopher R. Murray_
Erin E. Jones (TBN 24032478)
Christopher R. Murray (TBN 24081057)
4119 Montrose, Suite 230
Houston, TX 77006
Tel. 832-529-1999
Fax. 832-529-3393
erin@jmbllp.com
chris@jmbllp.com

*Counsel for the Debtor*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>PHOEBEN, INC., d/b/a ARMENTA,<br>Debtor. | Case No. 19-31000<br><br>Chapter 11 |

**DEBTOR AND DEBTOR-IN-POSSESSION'S**
**COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION**

JONES MURRAY & BEATTY LLP
Erin E. Jones (TBN 24032478)
Christopher R. Murray (TBN 24081057)
erin@jmbllp.com
chris@jmbllp.com
4119 Montrose, Suite 230
Houston, TX 77006
Tel. 832-529-1999
Fax. 832-529-3393

COUNSEL TO PHOEBEN, INC., D/B/A ARMENTA
DEBTOR AND DEBTOR-IN-POSSESSION

Dated: June 26, 2019

**PLEASE READ THIS COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION CAREFULLY. THIS DOCUMENT CONTAINS INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THE PLAN DESCRIBED HEREIN. IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.**

**THE DEBTOR BELIEVES THAT ACCEPTANCE OF THIS PLAN IS THE IN THE BEST INTEREST OF THE DEBTOR AND ITS CREDITORS AND PROVIDES THE HIGHEST AND MOST EXPEDITIOUS RECOVERIES TO HOLDERS OF ALLOWED CLAIMS IN THIS CASE.**

**<u>Table of Contents</u>**

I.      Summary .................................................................................................................................3

II.     Definitions, Instructions and Limitations ...........................................................................4

    A.      Definitions ......................................................................................................................4

    B.      Rules of Interpretation; Exhibits and Schedules..........................................................8

    C.      Representations and Limitations ..................................................................................8

III.    VOting and plan confirmation .........................................................................................10

IV.    Background ........................................................................................................................10

V.      Plan Terms .......................................................................................................................12

    A.      Introduction ................................................................................................................12

    B.      Summary of Claims Treatments ..................................................................................12

    C.      Secured Claims, Cure Amounts, Administrative Claims.............................................13

    D.      General Unsecured Claims and the Plan Administrator .............................................14

VI.    means of implementation and Confirmation requirements .............................................14

    A.      The Plan Administrator ...............................................................................................14

    B.      Alternative Plan ..........................................................................................................15

    C.      "Best Interest" Test ....................................................................................................15

    D.      Feasibility....................................................................................................................16

    E.      No Unfair Discrimination ...........................................................................................16

    F.      Executory Contracts ...................................................................................................16

    G.      Disclosure of Insider Compensation ..........................................................................16

    H.      Retention of Causes of Action.....................................................................................17

    I.      Effect of Confirmation of the Plan .............................................................................17

    J.      Inunction .....................................................................................................................18

    K.      Exculpation..................................................................................................................18

    L.      Ongoing Jurisdiction ..................................................................................................19

    M.      No Discharge...............................................................................................................19

    N.      Tax Consequences of the Plan.....................................................................................19

    O.      Taxation Generally......................................................................................................19

    P.      United States Trustee Fees ..........................................................................................19

VII. Conclusion...........................................................................................................................19

Phoeben, Inc., the debtor-in-possession in this chapter 11 case, respectfully submits this Combined Joint Disclosure Statement and Plan of Reorganization (the "Plan" or the "Disclosure Statement", as the context requires) pursuant to §§ 1125 and 1129 of Title 11 of the United States Code, as amended (the "Bankruptcy Code"). This document contains a description of the assets, liabilities and affairs of the Debtor, a description and analysis of the Plan and an analysis of alternatives to the Plan.

## I.    SUMMARY

Phoeben, Inc., which does business as Armenta, is the Debtor-in-Possession in this chapter 11 bankruptcy case. Following the successful sale of its business, the Debtor proposes the following Plan of Liquidation to provide distributions to holders of allowed claims.

The Debtor expects to close the sale of substantially all of its assets to Dothan Jewelry GP, LLC ("Dothan") no later than September 30, 2019 pursuant to the Bankruptcy Court's order approving that sale. The sale proceeds are expected to fully satisfy the claims of all secured creditors. The net proceeds remaining after satisfying the claims of secured creditors, along with the Debtor's causes of action against third parties and a small amount of raw materials inventory, will be liquidated by the Plan Administrator and distributed to holders of Allowed Claims under the terms of the Plan.

The amount that any particular creditor can expect to receive from the Plan Administrator will depend on the type of claim they hold, how that claim is treated under the Plan and the value obtained by the Plan Administrator from pursuing its claims against third parties and liquidating any remaining assets. The Debtor's projections and proposed class treatments are discussed in detail below and should be reviewed carefully.

As the debtor-in-possession, Phoeben, Inc. has presented this Plan and is proceeding to confirmation of the Plan either under Bankruptcy Code § 1129(a) or § 1129(b). The Debtor believes that the treatment afforded creditors of the Debtor under this Plan is far superior to a treatment the creditors would receive under a chapter 7 of the Bankruptcy Code. The Debtor urges creditors to vote in favor of the Plan and support confirmation of the Plan.

The purpose of this Disclosure Statement and Plan is to provide creditors of the Debtor and interested parties with adequate information to enable them to make an informed judgment concerning the method by which the Debtor plans to reorganize and pay its creditors. The Disclosure Statement describes: (i) the Debtor and significant events during the chapter 11 case (the "Bankruptcy Case"); (ii) how the Plan proposes to treat claims or interests of the type you may hold; (iii) classification of claims and interests as well as who can vote on or object to the Plan; (iv) the factors the Bankruptcy Court will consider when deciding whether to confirm the plan; (v) why the Debtor believes the Plan is feasible and how the treatment of your claim or interest under the Plan compares to what you would receive on account of your claim or interest in a hypothetical chapter 7 bankruptcy case; and (vi) the effects of confirmation of the Plan.

The alternative to the proposed Plan is most likely the conversion of the case to a case under chapter 7 and liquidation by a chapter 7 trustee. The Debtor believes that the statutorily imposed and other expected administrative costs of the chapter 7 process would quickly consume the limited

resources available for creditors. Indeed, the Debtor believes that if the Plan is not confirmed creditors are likely to receive nothing. The best recovery for creditors on their claims is approval of the Plan.

The Plan contains the exclusive and final statement of the rights of the Debtor, its creditors, interest holders and other interested parties, and sets forth what (if anything) each of those groups will receive and how they will receive it. It is strongly recommended that the Disclosure Statement be read in its entirety. If the Bankruptcy Court confirms the Plan, it will become binding on the Debtor, all creditors, interest holders and other interested parties.

You are also urged to read the contents of the Disclosure Statement in order to determine what rights you may have to vote on or object to the method by which the Debtor plans to reorganize and before making any decision on any such course of action. ***Particular attention should be directed to the provisions of the Plan affecting or impairing your rights, as they existed before the institution of this case. Please note, however, that this document cannot tell you everything about your rights. You are also encouraged to consult with your lawyers and advisors as you review and consider the Plan to enable you to obtain more specific advice on how the Plan will affect you.***

## II.   DEFINITIONS, INSTRUCTIONS AND LIMITATIONS

### A.   Definitions

Unless context otherwise requires, capitalized terms in this document have the meanings ascribed to them below:

"Administrative Claims Bar Date" is the first Business Day that is thirty (30) days after the Confirmation Date and is the deadline for a holder of an Administrative Claim to file a request with the Bankruptcy Court for payment of such Administrative Claim.

"Administrative Claims" means all administrative claims that have been timely filed before the Administrative Claims Bar Date under section 503 of the Bankruptcy Code other than Professional Administrative Claims or claims that are separately provided for under the Plan.

"Allowed" means, with respect to any Claim, except as otherwise provided herein: (i) a Claim that has been scheduled by the Debtor in its Schedules other than as disputed, contingent or unliquidated; (ii) a Claim that has been allowed by a Final Order; (iii) a Claim that is allowed: (a) in any stipulation of amount and nature of such Claim prior to entry of the Confirmation Order and approved by the Bankruptcy Court, or (b) in any stipulation of amount and nature of such Claim after entry of the Confirmation Order with the Debtor or the Plan Administrator, as the case may be; (iv) a Claim that is allowed under a provision of the Plan or Confirmation Order; (v) a Claim as to which a proof of claim has been timely filed and as to which no objection has been filed by the Claims Objection Bar Date. Any claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no proof of claim is or has been timely filed, is not considered Allowed and shall be expunged without further action by the Debtor and without further notice to any party or action, approval, or order of the Bankruptcy Court. Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes the Debtor or the

Debtor, as applicable. For the avoidance of doubt, a proof of claim filed after the General Bar Date shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-filed Claim. "Allow" and "Allowing" shall have correlative meanings.

"Asset Purchase Agreement" means that certain *Asset Purchase Agreement By and Between Dothan Jewelry Partners GP, LLC and Phoeben, Inc., as Debtor-in-Possession*, dated as of February 26, 2019, as amended from time to time and as approved by any Order of the Bankruptcy Court.

"Asset Sale" means the sale of substantially all of the Debtors assets to Buyer pursuant to the Sale Order.

"Bankruptcy Case" means the above-captioned In re Phoeben, Inc., case number 19-31000, pending before the Hon. Jeffrey Norman in the Bankruptcy Court.

"Bankruptcy Code" means title 11 of the United States Code and applicable portions of titles 18 and 28 of the United States Code, as amended from time to time and as applicable to the Bankruptcy Case.

"Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of Texas or any other court having jurisdiction of the Bankruptcy Case.

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, promulgated under 28 U.S.C. §§ 2075, the Bankruptcy Local Rules of the United States Bankruptcy Court for the Southern District and such other rules as may be promulgated and amended from time to time and as applicable to the Bankruptcy Case.

"Bar Date" means generally any date by which a claim must be filed and, depending on the context, may refer to the General Bar Date, the Professional Administrative Claims Bar Date, and the Administrative Claims Bar Date.

"Bridge Note Claims" means those claims asserted against the Debtor on account of ownership of a Bridge Note.

"Bridge Notes" means certain convertible notes issued in 2014 to insiders on account of prior equity interests and as compensation for professional services.

"Buyer" means Dothan.

"Cash Management Order" means the *Order Authorizing the Debtor to Continue Using its Prepetition Cash Management System* [Dkt 23].

"Claim" has the meaning set forth in section 101(5) of the Bankruptcy Code.

"Closing" means the date on which the Asset Sale shall have closed.

"Colored Stone Inventory" means that portion of the Debtor's raw materials inventory that is not included in the Asset Sale to Dothan, which is further defined in the Asset Purchase Agreement.

"Confirmation Date" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket in this Bankruptcy Case.

"Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, including all exhibits, appendices, supplements and related documents, which order shall be in form and substance satisfactory to the Debtor.

"Claims Objection Deadline" means the date that is 180 days after the Effective Date.

"Debtor" means Phoeben, Inc.

"Dothan" means Dothan Jewelry Partners GP LLC.

"Effective Date" means the date specified by the Debtor in a notice filed with the Bankruptcy Court as the date on which the Plan shall take effect, which date shall be following the date by which (i) the Confirmation Order becomes a Final Order and no stay of the Confirmation Order is in effect, unless the Debtor elects in its sole discretion to consummate the Plan on an earlier date if an appeal is timely filed; and (ii) all conditions to the occurrence of the Effective Date in the Plan shall have been satisfied or waived in accordance with the Plan.

"Estate" means the bankruptcy estate of the Debtor.

"Fee Procedures Order" means the *Order Establishing Interim Professional Compensation Procedures* [Dkt 89].

"Final DIP Order" means the *Final Order (A) Authorizing Credit Facility on a Secured and Superiority Basis Pursuant to 11 U.S.C. §§ 105, 361,362, 363, 364(C)(1), 364(C)(2), 364(C)(3) and 507(B) and (B) Granting Other Related Relief* [Dkt 66], as may be amended from time to time by further order of the Bankruptcy Court.

"Final Order" means an order of the Bankruptcy Court which has not been reversed, stayed, modified or amended and to which the time to appeal has expired and no appeal has been timely taken, or as to which any appeal that has been taken has been resolved by the highest court to which the order was appealed from and from which further appeal has other been dismissed with prejudice or the time for such further appeal to be taken has expired.

"General Bar Date" means July 1, 2019, which is the bar date established for filing proofs of claim in the Bankruptcy Case.

"General Unsecured Claims" means all unsecured Claims asserted against the Debtor.

"Interim DIP Order" means the *Interim Order (A) Authorizing Credit Facility on a Secured and Superiority Basis Pursuant to 11 U.S.C. §§ 105,361,362, 363, 364(c)(1), 364(c)(2), 364(c)(3) and 507(B); (B) Granting Other Related Relief; and (C) Scheduling a Final Hearing Pursuant to Rule 4001(B)(2) and (C)(2)* [Dkt 24].

"Net Available Cash" means that amount of cash that is available for distribution by the Plan Administrator to holders of Allowed Claims less the costs incurred by the Plan Administrator to administer the assets of the Estate.

"Order Conditionally Approving the Combined Disclosure Statement and Plan" means the order anticipated to be entered by the Bankruptcy Court in substantially the form of the proposed order to be filed.

"Plan Administrator" means Jarrod Martin, or such other Plan Agent as may be appointed from time to time in accordance with the Plan.

"Plan of Liquidation" or "Plan" means this combined plan and disclosure statement document.

"Professional Administrative Claims" means the professional fees and reimbursement of expenses of professionals retained under sections 327, 328 and 330 of the Bankruptcy Code, and approved by Final Order of the Bankruptcy Court to the extent any such fees or reimbursed expenses have not already been paid pursuant to any other Court order.

"Professional Administrative Claims Bar Date" means the date that is sixty (60) days following the Confirmation Date and the date by which all final applications for Professional Administrative Claims must be filed.

"Sale Order" means the *Order (I) Authorizing the Sale of Certain Assets Pursuant to Asset Purchase Agreement; (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sale; and (III) Granting Related Relief* [Dkt 94], as may be amended from time to time by further order of the Bankruptcy Court.

"Sale Procedures Order" means the *Amended Order (I) Establishing Bidding Procedures for the Sale of Certain of the Debtor's Assets; (II) Establishing Procedures Relating to the Assumption and Assignment of Executory Contracts and Unexpired Leases; (III) Approving Form and Manner of the Sale and Other Notices; (IV) Scheduling an Auction and a Hearing to Consider the Approval of the Sale; and (VI) Granting Certain Related Relief* [Dkt 67].

"Sale Proceeds" that cash to be paid pursuant to the Sale Order, as may be amended from time to time by further order of the Bankruptcy Court.

"Schedules" means the schedules and statement of financial affairs filed by the Debtor on the docket in the Bankruptcy Case as such document may be amended from time to time provided that such amendments must be filed on the docket to be effective.

"Solicitation Package" means the materials to be provided to creditors as described further in Section III, below.

"Third Party Causes of Action" means any and all claims, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity

7

claims, defenses, counterclaims and cross claims, now owned or hereafter acquired by the Debtor that are or may be pending or on or have accrued prior to the Effective Date against any person or entity other than any Debtor, based in law or equity, including, without limitation, under the Bankruptcy Code, whether direct, indirect, derivative or otherwise and whether asserted or unasserted as of the Confirmation Date; provided, however, that Third-Party Causes of Action shall not include any such claims released in the Plan or conveyed to the Buyer in the Asset Sale.

"Utilities Order" means the *Order (I) Approving the Debtor's Proposed Adequate Assurance of Payment of Future Utility Services, (II) Prohibiting Utility Companies from Altering, Refusing, or Discontinuing Services, and (III) Approving the Debtor's Proposed Procedures for Resolving Requests for Additional Assurance* [Dkt 26]

"Wage Order" means the *Order Authorizing the Debtor to Maintain and Perform its Obligations to Employees in Accordance with Pre-Petition Practices* [Dkt 25].

## B.     Rules of Interpretation; Exhibits and Schedules

The following rules of interpretation apply to this document: (i) as appropriate, terms stated in the singular or plural shall include both the singular and the plural, and any term in the feminine, masculine or neutral gender shall include the feminine, masculine and neutral genders; (ii) any reference to another contract, instrument or other document being in a particular form or on particular terms means that the referenced document shall be in substantially that form on substantially on those terms; (iii) any reference to an existing document or exhibit having been filed means that document or exhibit as it may thereafter have been amended, modified or supplemented; (iv) captions and headings are for the reader's convenience and are not substantive; (v) rules of construction in section 102 of the Bankruptcy Code apply herein, unless context requires otherwise; (vi) Bankruptcy Rule 9006(a) governs the calculation of time periods herein; (vii) any term not herein defined shall have the meaning ascribed in the Bankruptcy Code, the Bankruptcy Rules or any applicable orders of the Bankruptcy Court in this Bankruptcy Case as context requires; (viii) references to money are to United States dollars and (ix) references to [Dkt __] refer to the docket number of documents filed in the Bankruptcy Case and available through the Court's electronic filing system.

All exhibits and schedules to the Plan, including the Plan Supplement, are incorporated into and are part of the Plan, as if set forth herein. All exhibits and schedules in the Plan Supplement shall be filed with the Bankruptcy Court not later than seven (7) days prior to the Confirmation Hearing. Any such exhibits and schedules may be inspected in the office of the Clerk of the Bankruptcy Court during normal hours of operation of the Bankruptcy Court or may be requested from Debtor's counsel.

## C.     Representations and Limitations

Please review these important limitations and representations regarding this document:

**NO PERSON IS AUTHORIZED BY THE DEBTOR IN CONNECTION WITH THE PLAN OF LIQUIDATION OR THE SOLICITATION OF VOTES THEREON TO GIVE ANY INFORMATION OR TO MAKE ANY REPRESENTATION OTHER THAN AS CONTAINED IN THIS DOCUMENT AND THE EXHIBITS ANNEXED HERETO OR**

8

INCORPORATED HEREIN BY REFERENCE OR REFERRED TO HEREIN, AND IF GIVEN OR MADE, SUCH INFORMATION OR REPRESENTATION MAY NOT BE RELIED UPON AS HAVING BEEN AUTHORIZED BY THE DEBTOR.

THE INFORMATION CONTAINED HEREIN HAS BEEN PREPARED BY THE DEBTOR IN GOOD FAITH, BASED UPON UNAUDITED INFORMATION AVAILABLE TO THE DEBTOR AS OF THE DATE HEREOF. ALTHOUGH THE DEBTOR HAS USED ITS BEST EFFORTS TO ENSURE THAT SUCH INFORMATION IS ACCURATE, THE INFORMATION CONTAINED HEREIN IS UNAUDITED. THE DEBTOR BELIEVES THAT THIS PLAN AND DISCLOSURE STATEMENT COMPLIES WITH THE REQUIREMENTS OF THE BANKRUPTCY CODE.

THE STATEMENTS CONTAINED IN THIS PLAN OF LIQUIDATION ARE MADE AS OF THE DATE HEREOF, UNLESS ANOTHER TIME IS SPECIFIED HEREIN, AND DELIVERY OF THIS PLAN AND DISCLOSURE STATEMENT SHALL NOT CREATE ANY IMPLICATION THAT THERE HAS BEEN NO CHANGE IN THE FACTS SET FORTH HEREIN SINCE THE DATE OF THIS DOCUMENT AND THE DATE THE MATERIALS RELIED UPON IN PREPARATION OF THIS PLAN AND DISCLOSURE STATEMENT WERE COMPILED.

THIS DOCUMENT MAY NOT BE RELIED ON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN, AND NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTOR OR ANY OTHER PARTY, OR BE DEEMED CONCLUSIVE ADVICE ON THE TAX OR OTHER LEGAL EFFECTS OF THE PLAN ON HOLDERS OF CLAIMS AGAINST OR AN INTEREST IN THE DEBTOR.

FAILURE BY A CREDITOR OR INTEREST HOLDER TO TIMELY CAST A BALLOT OR FILE AN OBJECTION TO CONFIRMATION OF THE PLAN AND DISCLOSURE STATEMENT IN ACCORDANCE WITH THE DISCLOSURE STATEMENT ORDER AND THE BANKRUPTCY CODE SHALL CONSTITUTE AN AGREEMENT BY SILENCE TO ACCEPT THE TERMS CONTAINED IN THE PLAN OF LIQUIDATION.

THIS PLAN OF LIQUIDATION PROVIDES FOR INJUNCTIVE RELIEF AS TO THE DEBTOR AND IT ASSETS. THE PERMANENT INJUNCTIONS SET FORTH IN THE PLAN OF LIQUIDATION WILL APPLY TO HOLDERS OF ANY CLAIM, INTEREST, LIEN, ENCUMBERANCE OR DEBT, WHETHER SECURED OR UNSECURED, GRANTED PRIORITY STATUS, INCLUDING PRIORITY TAX (FEDERAL OR STATE), NON-PRIORITY UNSECURED CLAIM OR

ANY INTEREST IN THE DEBTOR. CREDITORS AND INTEREST HOLDERS WILL BE BOUND BY THIS INJUNCTIVE PROVISION UNLESS CREDITORS TIMELY FILE OBJECTIONS IN ACCORDANCE WITH THE PROVISIONS SET FORTH IN THE DISCLOSURE STATEMENT ORDER OR HEREIN AND APPEAR AT THE CONFIRMATION HEARING, TO PROSECUTE ANY OBJECTION.

THE DEBTOR URGES ALL HOLDERS OF CLAIMS TO VOTE TO ACCEPT THE PLAN.

## III.   VOTING AND PLAN CONFIRMATION

The Bankruptcy Court has not yet approved the proposed Plan. The Debtor asks the Bankruptcy Court to enter an order substantially in the form of the Proposed Order Conditionally Approving the Combined Plan and Disclosure Statement filed herewith. Among other things, the proposed order sets procedures for solicitation of the plan as follows.

Upon entry of the Order Conditionally Approving the Combined Disclosure Statement and Plan, the Debtor shall cause "Solicitation Packages" to be sent to all creditors holding Claims entitled to a vote. Recipients shall include creditors with Class 1 claims. Each Solicitation Package shall include (a) a notice of hearing substantially in the form of Exhibit A; (b) this combined Plan and Disclosure Statement with hearing dates filled in as appropriate; (c) a ballot substantially in the form attached hereto as Exhibit B; and (d) such other materials as the Bankruptcy Court may direct. The Debtor shall mail the Solicitation Packages by _____, 2019.

If you are entitled to vote to accept or reject the plan, you may cast the enclosed ballot by filling it out and returning it by electronic mail to chris@jmbllp.com, so that it is actually received by July 2, 2019, no later than 5pm CDT. Your receipt of a Solicitation Package is not an admission by the Debtor that your claim is valid or should be allowed. Ballots are subject to review and the requirements laid out in the Order Conditionally Approving the Disclosure Statement.

If you object to the Plan or the adequacy of the disclosures made in this document, you must file an objection with the Court and serve it upon the Debtor's counsel at chris@jmbllp.com, so that it is actually received by _____, 2019, at 5pm CDT.

A hearing at which the Bankruptcy Court will determine whether to confirm the plan will take place on _____, 2019, at _____, in Courtroom 403, 515 Rusk, Houston, TX, 77007.

## IV.   BACKGROUND

The Debtor is a Houston-based designer and maker of handcrafted jewelry. Founded in 2001, the Debtor has built an internationally known brand that is known for a creative use of mixed metals with precious and semi-precious stones. A description of the Debtor's history and its business was filed in the Bankruptcy Case in the *Declaration of Emily Armenta* [Dkt 3].

The Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on February 26, 2019. The petition was authorized by the Debtor's Board of Directors' *Certified Resolution* [Dkt 2]. The Certified Resolution authorized not only the filing of the petition, but also the proposed sale of substantially all of the Debtor's assets under section 363(b) of the Bankruptcy Code to Dothan. The Certified Resolution further authorized a sale auction procedure that included a stalking horse bid by Dothan. The Certified Resolution was unanimously approved by all non-recused directors. Out of an abundance of caution, director George Clark recused himself from the vote because he has a non-controlling interest in Dothan, and Emily Armenta recused herself because she intends to stay on as CEO after the sale and will therefore become an employee of Dothan.

Throughout the case, the Debtor has continued to operate its business as a debtor-in-possession. No trustee, examiner or creditor's committee has been requested or appointed.

On February 28, 2019, the Bankruptcy Court conducted a "first-day" hearing to consider certain emergency motions filed by the Debtor. Following the hearing, the Bankruptcy Court entered the following orders which have allowed the Debtor to continue to operate its business as a debtor-in-possession under chapter 11.

- The *Interim DIP Order* [Dkt 24] authorized the Debtor to borrow cash from Dothan on a secured, but non-priming, basis. The order further allowed the Debtor to use cash collateral with the consent of its Prepetition Lender.

- The *Wage Order* [Dkt 25] authorized the Debtor to continue paying its 44 employees in the ordinary course of business.

- The *Utilities Order* [Dkt 26] authorized the Debtor to make deposits with utilities to ensure the continuity of critical services.

- The *Cash Management Order* [Dkt 23] facilitated the Debtor's continued use of its existing bank and pre-paid credit card accounts.

Following a hearing held March 27, 2019, the Bankruptcy Court entered its Final DIP Order authorizing the use of debtor-in-possession financing and cash collateral on a final basis and entered the Sale Procedures Order authorizing the Debtor to proceed with its marketing efforts of its assets.

The Debtor conducted the marketing process in accordance with the Sale Procedures Order. However, despite extensive outreach, few interested parties were identified, and no parties were identified who were interested in submitting a bid. Therefore, no auction was conducted and the Debtor proceeded to seek Bankruptcy Court approval of the stalking horse sale to Dothan. Prior to the hearing on the Debtor's motion to approve the sale, the Debtor was able to negotiate a substantial increase in the cash sales price and the assumption of additional liabilities by Dothan.

On April 30, 2019, the Bankruptcy Court entered its Sale Order authorizing the sale of substantially all of the Debtor's assets to Dothan. The Debtor anticipates this transaction will close on or about June 14, 2019. The Debtor has pending a motion to modify the Final DIP Order and the Sale Order to accommodate this timing, to allow the Debtor to continue using cash until closing, and to clarify certain additional terms of the sale.

11

During the Bankruptcy Case, the Court entered orders authorizing the Debtor to employ the following professionals: (i) Jones Murray & Beatty, LLP ("JMBLLP") as its general bankruptcy counsel ("JMBLLP Employment Order") [Dkt. 86]; and (ii) GGG Partners LLC (Tom Pierce) as its sales process advisor ("GGG Employment Order") [Dkt. 87].  The Court entered an Order Approving Interim Compensation Procedures ("Compensation Procedures Order")[Dkt. 89] setting forth procedures for payment of professionals on an interim basis during the chapter 11 case.  JMBLLP filed a notice required under the Compensation Procedures Order on May 1, 2019 ("JMBLLP Fee Notice #1") [Dkt. 95] and on June 5, 2019 ("JMBLLP Fee Notice #2) [Dkt. 114].

## V.     PLAN TERMS

### A.     Introduction

The Debtor's proposed Plan of Liquidation sets forth the means for satisfying the holders of claims against the Debtor's estate in this chapter 11 Bankruptcy Case. Upon confirmation, a plan becomes binding on the Debtor and all of its creditors and equity holders, and all prior obligations owed by the Debtor are entitled only to the treatment provided for under the plan.

In most cases, creditors are entitled to vote whether to accept or reject the proposed plan. Votes are counted on a class-by-class basis, with creditor claims being grouped into classes of similar claims. A class of claims will be deemed to have accepted the plan if the majority of voting claim holders by number, and two-thirds of voting claim holders by value, vote to accept. In some cases, classes of claims that are paid in full, or that are considered "not impaired," do not vote and are deemed to have accepted the plan. Other classes that will not receive anything under the plan are conclusively deemed to have rejected the plan.

To be confirmed, a plan must be in the "best interest" of creditors, meaning that each class of creditors is expected to receive more under the plan than they would in a hypothetical liquidation under chapter 7. Here, the Debtor believes that a chapter 7 liquidation would impose an additional layer of administrative cost that directly reduce the amount available to pay creditor claims and would likely result in no recovery at all. Therefore, the Debtor recommends claim holders to accept the proposed Plan of Liquidation.

### B.     Summary of Claims Treatments

| Claim Type | Estimated Allowed Claims | Treatment | Estimated Recovery |
|---|---|---|---|
| Secured Claim of Prepetition Lender | $1,678,489 | Paid at Closing From Sale Proceeds | 100% |
| Secured Claim of DIP Lender | $304,359 | Paid at Closing From Sale Proceeds | 100% |
| Secured Tax Claim of Harris County 2018 | $51,943 | Paid at Closing From Sale Proceeds | 100% |

| Claim Type | Estimated Allowed Claims | Treatment | Estimated Recovery |
|---|---|---|---|
| Secured Tax Claim of Harris County 2019 | $51,429 | Assumed by Buyer | 100% |
| Administrative Expenses other than Professional Administrative Claims | $0 | Assumed by Buyer | 100% |
| Professional Administrative Claims | $134,500 | Paid Pursuant to Budget or from Net Available Cash | 100% |
| Class 1 – General Unsecured Claims | $967,466 to $3,200,000[1] | Paid pro-rata per Allowed Claim amount from Net Available Cash | 1.0 – 9.6%[2] |

All of the foregoing amounts are estimates and may vary. Amounts owed to secured creditors may vary based on the interest and costs owed as of the date of closing, which may vary, and all such amounts are subject to changes according to further Order of the Bankruptcy Court.

**C.     Secured Claims, Cure Amounts, Administrative Claims**

The Debtor's Prepetition Lender is owed principal and interest as of Closing. This includes reimbursable expenses and costs up to a negotiated cap. Therefore, final amounts payable to the Prepetition Lender at Closing may be lower than this amount. The difference will remain with the Debtor.

The Buyer is assuming ordinary course payables of the Debtor's business. Accordingly, the Debtor does not anticipate any Administrative Claims. However, to the extent there are Administrative Claims, such claims will be assumed and paid by the Buyer. For the avoidance of doubt, the Buyer's assumption of payables incurred during the pendency of this Bankruptcy Case shall not include any Professional Administrative Claims.

---

[1]     These estimates represent the Debtor's best current estimate of the likely reasonable range of General Unsecured Claims considering a variety of assumptions regarding the potential outcomes of the claims objection and resolution process. These estimates are based on information available in the Debtor's Schedules and the Claims Register in this Bankruptcy Case as of the date of filing this Plan and could be subject to adjustment for later filed claims.

[2]     These estimates represent the likely reasonable range of possible distributions to holders of Allowed General Unsecured Claims depending on the outcome of the claims objection and resolution process. These estimates are based on information available in the Debtor's Schedules and Claims Register in this Bankruptcy Case as of the date of filing this Plan and could be subject to adjustment for later filed claims.

Professional Administrative Claims are being paid from operating cash pre-Closing pursuant to the Fee Procedures Order and the Debtor's authority to use cash for that purpose under the Final DIP Order. Professional Administrative Claims that are unpaid as of Closing will be paid by the Plan Administrator pursuant the Plan. To the extent payment of Professional Administrative Claims would render the Estate insolvent, the Debtor's Chapter 11 Professionals have consented to a voluntary reduction in their fees. The Debtor anticipates that only two parties shall hold Professional Administrative Claims – Jones Murray & Beatty LLP and GGG Partners LLC – both of which consent to this alternative treatment of their claims under the Plan.

### D.   General Unsecured Claims and the Plan Administrator

Allowed unsecured claims will be satisfied by distributions by the Plan Administrator from Net Available Cash. As of the Effective Date, the Debtor shall transfer to the Plan Administrator (a) all cash in the Post-Sale DIP Account; (b) the Colored Stone Inventory; (c) all causes of action against third parties, including but not limited to chapter 5 avoidance actions; and (d) any other assets held by the Debtor. The estimated balance expected to be in the Post-Sale DIP account is $38,440. The Colored Stone Inventory is estimated to have a liquidation value of approximately $10,000. The causes of action are estimated to have a value as high as $100,000 to $200,000. These causes of action include preference actions, as well as fraudulent transfer claims. After payment of administrative expenses of the Plan Administrator, the Debtor estimates the Plan Administrator will distribute between $25,000 and $100,000 to holders of Allowed Claims in Class 1.

Class 1 is comprised of holders of Allowed General Unsecured Claims. Class 1 Claims are impaired and are entitled to vote on the Plan. The total Class 1 claims are estimated to be as low as $967,466 or as high as $3,200,000, subject to adjustment for claim objections and settlements regarding allowed claim amounts. Class 1 claims will be paid by the Plan Administrator on a pro-rata basis from the Net Available Cash.

The Plan Administrator will be Jarrod Martin, a Houston-based bankruptcy attorney with extensive experience in liquidations and restructurings. Martin has agreed to a reduced compensation structure for himself as Plan Administrator, which shall be 1% of disbursements to holders of Allowed Claims.

## VI.   MEANS OF IMPLEMENTATION AND CONFIRMATION REQUIREMENTS

### A.   The Plan Administrator

The Plan Administrator will be the fiduciary responsible for carrying out the terms of the Plan, upon confirmation of the Plan. The Plan Administrator will be responsible for, among other things, (i) filing, prosecuting, and settling claim objections; (ii) prosecuting and settling the estate's causes of action; (iii) winding-up and closing the estate; (iv) abandoning any assets that are of no benefit to the creditors or the estate; (v) enforcing the payment of notes or other obligations of any person; (vi) opening and maintaining bank accounts on behalf of the Plan Administrator, if required; (vii) paying all lawful expenses, debts, charges, liabilities or claims of the Debtor as contemplated by the Plan and determining when such distributions shall be made with the time periods prescribed under the Plan; (viii) taking any and all action necessary to preserve and maximize the value of assets; (ix) appointing, engaging, employing, supervising, and compensating consultants, accountants,

technical, financial, real estate, or investment advisors or attorneys, agents or brokers, corporate fiduciaries, or depositories; (x) delegating any or all of the discretionary power and authority conferred with respect to all or any portion of the estate's property to any one or more reputable individuals or recognized institutional advisers or investment managers without liability for any action taken or omission made because of any such delegation except for such liability as is provided in the Plan; (xi) executing, delivering, and performing such other agreements and documents and to take or cause to be taken any and all such other actions as may be necessary or desirable to effectuate and carry out the purposes of the Plan; (xii) undertaking any action necessary to ensure compliance with applicable federal, state, and local laws; (xiii) filing any federal, state, or local tax returns and provide for the payment of any related taxes; (xvi) filing any necessary reporting in the Bankruptcy Case; and (xv) undertaking any action necessary to perform any obligation provided for or required under the Plan.

Upon the Effective Date, the Plan Administrator will be authorized to employ professionals, including but not limited to legal and accounting professionals, without Court authorization, including without limitation employment of professionals on a contingent fee basis.

Upon the Effective Date, the Plan Administrator will be authorized but is not required to pursue, settle and compromise claims, causes of action, claim objections, disputes and controversies without the need for further Court Order.

## B.    Alternative Plan

If the Bankruptcy Court does not confirm the proposed Plan of Liquidation, the Bankruptcy Code allows for another party to propose an alternative plan. The Debtor believes this is a practical impossibility in this case. There is no creditor's committee. There has been no creditor indicating an interest in advancing an alternative plan. Given the relatively modest anticipated distribution to unsecured creditors, it is likely that no creditor would expend the resources required to formulate and propose an alternative plan.

The Debtor believes the Plan of Liquidation maximizes value for unsecured creditors under the circumstances and represent their best opportunity for a meaningful return. In other words, there is no practical or viable alternative to the Plan of Liquidation. If the Plan is not confirmed, the Debtor expects a conversion to a case under chapter 7 would be highly likely.

## C.    "Best Interest" Test

The Debtor believes the Plan is in the best interest of the estate and its creditors because each class of creditor in would receive more under the Plan than they would in a hypothetical liquidation under chapter 7, or that they would vote to accept the plan. 11 U.S.C.§ 1129(a)(7). The Debtor believes that Class 1 will vote to accept the Plan.

Even if Class 1 does not vote to accept the Plan, section 1129(a)(7) would still be satisfied because such class members would receive less in a chapter 7 liquidation. First, chapter 7 has an additional layer of statutory and other administrative costs, including the chapter 7 trustee's fee, and the cost of any professionals hired to pursue claims. Given the modest amount of cash anticipated after Closing, there would be little or nothing left for unsecured creditors. Second, a chapter 7 trustee would be less well equipped to pursue the chapter 5 avoidance actions. This is because the trustee

would be dealing with claims reconciliation and analysis tasks at the same time he or she would be getting a handle on the claims. Third, in the event of unexpected circumstances leading to a lower value of post-Closing estate assets, the creditors could benefit from the Chapter 11 Professionals' agreements to pro rata reductions in payment on claims. Such concessions would not be made outside of the Plan. Such administrative claims would therefore displace money otherwise available to generally unsecured creditors in a chapter 7 liquidation scenario.

### D.     Feasibility

The Plan is feasible because it is anticipated that there will be sufficient cash to fund distributions to holders of Allowed Claims from the Net Available Cash. Plan payments do not depend on the success of the business, which will already have been transferred to the Buyer, but instead on cash anticipated to be recovered from causes of action, liquidation of other assets or the cash available by the Plan Administrator.

The Plan is feasible because the Debtor fully anticipates Closing to occur as anticipated and there are projected to be sufficient funds post-Closing to make all payments required to be made under the Plan. Payments required to be made by the Buyer are feasible because of the substantial wherewithal of the financial partners of the Buyer and representations the Buyer has made throughout these cases regarding its commitment to operating the Debtor's business post-Closing.

### E.     No Unfair Discrimination

The Plan "does not discriminate unfairly" against any class of claims because (a) the legal rights of a non-accepting class are treated in a manner that is consistent with the other classes whose legal rights are similar to the legal rights of the non-accepting class, and (b) no class receives payments in excess of what it is otherwise legally entitled to. Here, the Debtor believes that no class of claims is treated in a manner inconsistent with the treatment of other similarly situated classes of claims, if any. The Debtor believes the Plan of Liquidation is consistent with the absolute priority rule because no equity interests receive anything under the Plan, and priority unsecured claims are paid in full.

### F.     Executory Contracts

The Buyer has assumed certain executory contracts identified in the Asset Purchase Agreement as of Closing. All executory contracts not assumed as of the Confirmation Date will be deemed rejected. Claims of executory contract counterparties must be filed within thirty (30) days of the Confirmation Date. If allowed, such claims shall be entitled to treatment as Class 1 claims. The Debtor is not aware of any such contracts that are not already addressed in the Asset Purchase Agreement by being assumed and assigned and does not anticipate any such claims being filed. The Debtor is not aware of any cure amounts required to be paid upon the assumption and assignment of the contracts at issue.

### G.     Disclosure of Insider Compensation

Upon Closing, the Buyer intends to employ all of the Debtor's employees, including its CEO Emily Armenta and COO Ailsa Phelps. To the extent those individuals or any other employees of the Debtor are insiders under applicable definitions, the Debtor discloses that those employees will be

employed by the Buyer on substantially the same terms as they were employed by the Debtor. Further, the Debtor discloses that there are no agreements or promises to provide any employee or insider of the Debtor with anything other than continued employment as contemplated herein. None of the directors on the Debtor's Board of Directors has received no compensation or promises of compensation during this case on account of their role as director or otherwise and none is contemplated, except that director George Clark has a non-controlling equity interest in the Buyer. Clark accordingly recused himself from the Board of Director's consideration of the Asset Sale and the Certified Resolution approving the pursuit of the Asset Sale and this Bankruptcy Case.

## H.   Retention of Causes of Action

The Debtor on behalf of itself and its Estate shall retain any and all claims, rights and/or causes of action under Chapter 5 of the Bankruptcy Code, any and all claims, rights and/or causes of action under fraudulent conveyance and fraudulent transfer laws, and any and all claims, rights and/or causes of action under non-bankruptcy laws vesting in creditors rights to avoid, rescind, or recover on account of transfers including but not limited to all preference laws and any other causes of action against third parties. All claims, rights, defenses, offsets, recoupments, causes of action, actions in equity, or otherwise, whether arising under the Bankruptcy Code or federal, state, or common law, which constitute property of the Estate within the meaning of Section 541 of the Bankruptcy Code, as well as all claims, rights, defenses, offsets, recoupments, claims for subordination, and causes of action arising under Chapter 5 of the Bankruptcy Code (including without limitation Avoidance Actions, Subordination Claims, and Claim Objections) with respect to the Debtor or its Estate, shall be and hereby are preserved for the benefit of the Estate, and shall be and hereby are deemed to be part of the Assets which shall vest in the Estate and be transferred to the Plan Administrator to manage and administer for the benefit of holders of Allowed Claims as set forth in the Plan. The foregoing includes, but is not limited to, all claims and causes of action referenced in the Debtor's bankruptcy schedules, statement of financial affairs, and disclosure statement as presently existing or as may be amended hereafter. For purposes of standing to assert and prosecute claims and causes of action, the Plan Administrator is the successor to the Debtor under the Bankruptcy Code.

Confirmation of the Plan effects no settlement, compromise, waiver, or release of any claim, cause of action, right of action or claim for relief of the Debtor, the Estate, or the Plan Administrator unless expressly and unambiguously provided for in the Plan or the Confirmation Order. The non-disclosure or non-discussion of any particular claim, cause of action, right of action or claim for relief of the Debtor, the Estate or the Plan Administrator shall not be construed as a settlement, compromise, waiver or release of such claim, cause of action, right of action or claim for relief.

## I.   Effect of Confirmation of the Plan

The Confirmation Order will be the final determination of the rights of all claimants to participate in distributions, including any distributions paid by the Plan Administrator, under the Plan, whether or not (a) a proof of claim is filed, (b) such claim is allowed or (c) the holder of such claim has accepted the Plan.

### J.    Inunction

On the Effective Date, except as otherwise provided in the Plan or the Confirmation Order, all persons shall be deemed to be bound by the terms of the Plan, including holders of claims or interests not listed on the Schedules but who have notice of the Bankruptcy Case, or listed on the Schedules as disputed, unliquidated or contingent, who did not file proofs of claim or interest by the applicable Bar Date, and, to the extent permitted under section 1141(d)(3) of the Bankruptcy Code, will be prohibited from:

a)    Commencing or continuing any suit, action or other proceeding of any kind or nature or employing any process against the Debtor, the Estate, the Debtor's assets, the Plan Administrator, or to interfere with the consummation or implementation of this Plan or the distributions to be made hereunder;

b)    Enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, directly or indirectly, any judgment, award, decree or order against the Debtor, the estate or the Debtor's assets or any direct or indirect successor in interest to the Debtor, or any assets or property of such successor;

c)    Creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any lien against the Debtor, the estate or the Debtor's assets, or any direct or indirect successor in interest to the Debtor, or any assets or property of such successor other than as contemplated by the Plan,

d)    Except as provided herein, asserting any setoff, right of subrogation or recoupment of any kind, directly or indirectly, against any obligation due the Debtor, the estate or the Debtor's assets, or any direct or indirect successor in interest to the Debtor, or any assets or property of such successor, and

e)    Proceeding in any manner in any place whatsoever that does not conform to or comply with the provisions of the Plan and Disclosure Statement.

### K.    Exculpation

From and after the Effective Date, to the extent permitted under section 1125(e) of the Bankruptcy Code, the Debtor and the estate, the officers and directors of the Debtor, and the Chapter 11 Professionals shall neither have nor incur any liability to any person for any act taken or omitted to be taken in connection with the Bankruptcy Case, including the formulation, preparation, dissemination, implementation, confirmation or approval of the Plan; provided, however, that the foregoing provisions (a) shall not affect the liability of any person that otherwise would result from any such act or omission to the extent that act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct and (b) shall not abrogate any applicable disciplinary rules. Any of the foregoing parties in all respects shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

**L.     Ongoing Jurisdiction**

The Bankruptcy Court will retain jurisdiction over the Bankruptcy Case after the Confirmation Date and until the case is closed for certain specified purposes. For example, the Bankruptcy Court will, among other things, (a) hear and determine any objections to claims, controversies, suits or other claims, (b) hear and determine all applications for professional compensation, (c) hear and determine any claims brought by the Plan Administrator, including any discovery sought by the Plan Administrator under Bankruptcy Rule 2004 or otherwise and (d) enforce the Plan and Confirmation Order.

**M.     No Discharge**

Because the Debtor will dispose of substantially all of its assets and cease to operate any business, no discharge is sought under the Bankruptcy Code. All claims against the Debtor must nevertheless be timely and properly asserted in accordance with the Plan and Confirmation Order.

**N.     Tax Consequences of the Plan**

Creditors and interested parties concerned with how the Plan may affect their tax liability should consult with their own accountants, attorneys, and/or advisors.

**O.     Taxation Generally**

This discussion is for informational purposes and does not constitute tax advice. The federal income tax consequence of implementation of the Plan to a holder of a Claim will depend on (i) whether the Claim constitutes a debt or security for federal income tax purposes, (ii) whether the holder of the Claim receives consideration in more than one tax year, (ii) whether the holder of the Claim is a resident of the United States, (iv) whether the consideration received by the holder of the Claim is part of an integrated transaction, (v) whether the holder of the Claim utilizes an accrual or cash method of accounting, and (iv) whether the holder has previously taken a bad debt deduction or worthless security deduction with respect to the Claim.

The federal, state, and foreign tax consequences of the Plan are complex and, in many areas, uncertain, therefore you are urged to consult a tax professional. The Debtor will not recognize any income to the extent of forgiveness of debt under this Plan.  The Debtor will pay any tax liability associated with the sale of assets, if any, from the proceeds of the sale of such Assets.

**P.     United States Trustee Fees**

Fees payable to the United States Trustee pursuant to 28 U.S.C. §1930(a)(6) to the extent unpaid through the Confirmation Date, shall be paid by the Debtor.  From and after the Confirmation Date through the closing of the Chapter 11 Case, all statutory fees shall be paid by the Plan Administrator.

**VII.    CONCLUSION**

The Debtor has negotiated and formulated the terms of the proposed plan in good faith and at arm's length with creditors. The Debtor believes the Plan provides the best recovery for all classes

of creditors and is the best return for all holders of allowed claims because the alternative – liquidation in a chapter 7 cases – would likely provide creditors with nothing at all. The Debtor intends to solicit the support of creditors and encourages all such creditors to vote to accept the plan.

Dated: June 26, 2019

JONES MURRAY & BEATTY, LLP

_____          -AND-          _____
Emily Armenta, CEO                                              Erin E. Jones (TBN 24032478)
Phoeben, Inc.                                                           Christopher R. Murray (TBN 24081057)
                                                                                  erin@jmbllp.com
                                                                                  chris@jmbllp.com
                                                                                  4119 Montrose, Suite 230
                                                                                  Houston, TX 77006
                                                                                  Tel. 832-529-1999
                                                                                  Fax. 832-529-3393
                                                                                  COUNSEL   FOR   THE   DEBTOR-IN-
                                                                                  POSSESSION